### GATES et al. v. WILLIAMS.

(City Court of New York, General Term.    April 14, 1893.)

1. LIABILITY ON NOTE—CONSIDERATION—NONSUIT.

In an action on a note made by another to plaintiffs' order and indorsed by a married woman before delivery to them, the complaint alleged that the note was delivered so indorsed in payment for certain lumber delivered to defendant. The only evidence of this was that one of plaintiffs testified that he told defendant's husband that he would supply the lumber if it could be charged to defendant, and her husband said she agreed to it. He also testified, "I can't swear to anything about his wife, any more than what he told me." *Held,* that defendant was entitled to a nonsuit.

2. SAME—INDORSEMENT.

It appeared that one of the makers induced defendant to indorse the note. He testified that he told defendant that plaintiffs wished to discount the note, that they couldn't do it with his name; that he asked her to indorse it, and she did so. It appeared that the note was discounted by a bank for plaintiffs. *Held,* that the proof did not show that defendant indorsed the note to give the makers credit with plaintiffs, but she was only second indorser, and not liable to payees, the first indorsers.

Appeal from trial term.

Action by Ephraim C. Gates and others against Ellen Williams on a note. From a judgment entered on a verdict directed for plaintiffs, defendant appeals. Reversed.

Argued before McGOWN, VAN WYCK, and FITZSIMONS, JJ.

Jas. A. Deering, for appellant.
G. W. Stephens, for respondents.

VAN WYCK, J. Messrs. Gates & Co., the plaintiffs, sue Mrs. Williams, the defendant, upon a note made by Fritz & Hafner to the order of Gates & Co., and indorsed by her before delivery to them, and their complaint recognizes that from the instrument itself the presumption of law is that she intended to become liable simply as a second indorser, (Coulter v. Richmond, 59 N. Y. 481,) for it is further alleged therein that this note was made and indorsed and delivered to them as so indorsed for the purpose of paying for building materials furnished by them to her. Except for this latter allegation, the complaint would have been demurrable; hence the plaintiffs' cause was maintainable only upon proof thereof.

And upon this theory the case was tried, but they failed to prove by legal evidence that they had furnished the materials to her, or upon her credit, for their only proof upon this question was that of their Mr. Barnard, who testified: "I told him [her husband] I was willing to supply the lumber if we could charge it to Mrs. Williams, * * * and he said she agreed to it;" and, continuing, he testified, "I can't swear to anything about his wife, any more than what he told me." This evidence was taken against defendant's objection, and allowed upon the statement of plaintiffs' attorney, "We will show that she ratified it." However, the proof does not show that she ratified it, nor does it show any authority by her husband to act for her. At the close of plaintiffs' case the defendant was entitled to a nonsuit, and her motion to dismiss, then made, should have been granted, instead of denied. The defendant's proof in no way closes these gaps in plaintiffs' proof as to ratification by her and authority by her husband, for they both testify that he had no such authority, and that she had never agreed to have the lumber charged to her. The defendant's motion to dismiss on the merits at the close of the case should have been granted. The plaintiffs insist, however, that, although their complaint did not allege that Mrs. Williams indorsed the note under an agreement to give the makers credit with the payees, these plaintiffs still claim that the proof shows that she indorsed it under such an agreement. But such is not the proof, for Mr. Robinson, plaintiffs' collector, who conducted the negotiations as to this indorsement, testifies: "I don't know what was said to Mrs. Williams when she signed this note. I represented to her husband that we wanted to get money on the note at a bank. I wanted to get it in the right shape, so it could be negotiated." And Mr. Fritz, who really induced Mrs. Williams to indorse the note, testifies: "I can repeat my exact words in asking Mrs. Williams to indorse this note. I told Mrs. Williams that Gates & Co. wanted to raise money on the note, and they couldn't do it with my name; and I asked her if she wouldn't be kind enough to indorse that note, so they could have it discounted; and she did so." It is in proof that the note was discounted by a bank for plaintiffs, (the payees,) and protested for nonpayment, and subsequently taken up and now held by plaintiffs. This proof does not show that Mrs. Williams indorsed the note for the purpose of giving the makers credit with the payees, but rather that she indorsed it to give the payees credit with the bank of discount, and certainly does not overcome the well-settled presumption of law that a person making such an indorsement intended to become liable only as a second indorser, and that on the face of the paper, without explanation, she is to be regarded as second indorser, and, of course, not liable upon the note to the payee, who is supposed to be the first indorser. Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur.